d

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| ASSOCIATED PROFESSIONAL EDUCATORS OF LOUISIANA, Plaintiff | CIVIL DOCKET NO. 1:22-CV-05720 |
| VERSUS | CHIEF JUDGE TERRY A. DOUGHTY |
| E D U 20/20 L L C ET AL, Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

REPORT AND RECOMMENDATION

Before the Court is a Motion to Dismiss filed by Defendants EDU20/20, LLC ("EDU"), Courtney Dumas ("Dumas"), and Miranda Britt (collectively, "Defendants"). ECF No. 8. Under Fed. R. Civ. P. 12(b)(1), Defendants argue that the Court lacks jurisdiction because Plaintiff, Associated Professional Educators of Louisiana ("APEL"), has not established "any plausible nexus with interstate commerce in connection with its sole federal claim under the Defend Trade Secrets Act," 18 U.S.C. § 1836 *et seq.* (the "DTSA"). ECF No. 8 at 1. Under Fed. R. Civ. P. 12(b)(6), Defendants also argue that APEL has failed to state any viable claim against Defendants whatsoever.

However, the "interstate commerce provision" is an element of the DTSA claim, and not a jurisdictional requirement. Fed. R. Civ. P. 12(b)(1) is thus inapposite. And APEL's allegations, accepted as true, state a viable claim for misappropriation of

1

trade secrets under the DTSA. Therefore, Defendants' Motion to Dismiss (ECF No. 8) should be DENIED.

I. <u>Background</u>

APEL is a Louisiana nonprofit corporation "organized for the purpose of supporting educators." ECF No. 14 at 5. APEL provides products, services, and support to teachers seeking professional development, certifications, and skills training. APEL also provides its members a platform for professional association and advocacy. APEL's activities and operations are plainly centered in Louisiana. But it also claims to offer services to, and affecting, teachers in other states.

Defendant Britt was hired in 2014 as APEL's "Director of Professional Development and University Programming." She eventually became APEL's Deputy Director, or "second-in-command." In this position, Britt "had accesss to all of [APEL's] materials, proprietary information, and intellectual property." *Id.* at 12.

Defendant EDU is a Louisiana limited liability company. EDU provides services similar – and at least in large part, functionally identical – to those provided by APEL. Defendant Dumas formed EDU in 2015.

APEL and EDU provide products and services to individual members, and to school districts, as "clients." EDU applied to become a vendor with the State of Louisiana – and thus, a direct competitor with APEL – in September 2020. APEL alleges that, between then and continuing through 2021 and 2022, Britt began providing confidential and proprietary information – its "trade secrets" – to EDU. APEL further claims that, as early as May of 2021, Britt was actively working for

EDU and soliciting business from school districts for EDU. During this time, Britt was still employed by APEL. The Amended Complaint lists a number of purported instances during which Britt claimed to either be working from home for APEL or on vacation while actually performing solicitation services for EDU.

In October 2021, however, APEL secured a "large contract" which would have precluded Britt from continuing to work from home. *Id.* at 21. Shortly thereafter, Britt indicated that she intended to resign. Until the end of 2021, APEL alleges that Britt continued to work for EDU while maintaining her position with, and accepting pay and reimbursements from, APEL.

Britt's formal employment with APEL ended on December 31, 2021. Britt continued to provide services to APEL on a contractual basis until March 2022. APEL claims to have only later discovered Britt's work for EDU, along with her alleged acts of duplicity to APEL.

APEL alleges that, in some instances, Britt was successful in securing business, relationships, and other opportunities for EDU, to the detriment of APEL. According to APEL, EDU and Dumas were aware that Britt was still employed by APEL, had acquired APEL's trade secrets surreptitiously, and was actively attempting to undermine APEL's relationships (or at least advance EDU's interests) with various educational organizations and school districts.

APEL filed suit on October 16, 2022, asserting, among others, a DTSA claim. Defendants moved to dismiss shortly thereafter. ECF No. 8. APEL has since filed an Amended Complaint (ECF No. 14), which Defendants answered (ECF No. 16).

3

II. Law and Analysis

    A. Rule 12(b)(1) does not warrant dismissal.

As a threshold matter, the parties – like many federal courts around the country – dispute whether the DTSA's interstate commerce requirement is "jurisdictional" in nature. *See, e.g.*, *M&A Metals, Inc. v. Fina*, No. 21CV5570PKCPK, 2023 WL 2734794, at *3 (E.D.N.Y. Mar. 31, 2023) ("[I]t is unclear whether the commerce element of the DTSA is, in fact, jurisdictional . . . [While] [c]ourts in this Circuit are split too . . . the majority seemingly treat it as jurisdictional.") (chronicling cases). Of course, this determination is meaningful in several respects, perhaps foremost of which is the applicable provision of Fed. R. Civ. P. 12.

The purpose of the DTSA "to provide a civil remedy for misappropriation . . . of trade secrets related to a product or service used in, or intended for use in interstate or foreign commerce." *Sapienza v. Trahan*, No. 16-CV-01701, 2017 WL 6012658, at *6 (W.D. La. Oct. 23, 2017), report and recommendation adopted, No. CV 16-1701, 2017 WL 6008076 (W.D. La. Dec. 4, 2017). Cogent arguments have been made that this stated purpose of the DTSA makes the interstate commerce requirement "jurisdictional" in nature. And of course, this requirement is the DTSA's principal meaningful distinction from its Louisiana law counterpart.

By nature, "jurisdictional requirements" indicate whether a court has the authority to adjudicate a dispute. That issue is distinct from whether a plaintiff has, or can, state a viable cause of action under a federal statute with a comparable state

statute. Another district court in our circuit has thoroughly explained this distinction:

> Defendants maintain that Providence has failed to adequately plead the interstate-commerce element of its DTSA claim. Although dismissal motions premised on a plaintiff's alleged failure to adequately plead the elements of a cause of action are typically made under Rule 12(b)(6), here, Defendants have asserted that Providence's purported failure to adequately plead the DTSA's interstate-commerce element deprives the Court of subject-matter jurisdiction under Rule 12(b)(1).
>
> Section 1331 confers jurisdiction on federal courts any time a federal claim appears on the face of a plaintiff's complaint unless the claim is frivolous—i.e., "patently without merit." *Young v. Hosemann*, 598 F.3d 184, 188 (5th Cir. 2010) (quotation omitted). Otherwise, when a court determines that a plaintiff's asserted federal claim is invalid, the claim is dismissed on the merits. *Id.* (quoting *Williamson v. Tucker*, 645 F.2d 404, 415–16 (5th Cir. 1981) (en banc)). Accordingly, a defendant challenging the adequacy of a plaintiff's pleading of a nonfrivolous, federal cause of action must move under Rule 12(b)(6), not Rule 12(b)(1). *See id.*
>
> Providence's DTSA claim is a federal claim that appears on the face of Providence's complaint, and Defendants do not contend that Providence's DTSA claim is frivolous—nor could they. But because Defendants characterize the interstate-commerce element of a DTSA claim as a "jurisdictional element," Defendants assert that Providence's purported failure to adequately plead an interstate-commerce nexus means that there is no federal-question jurisdiction.
>
> To be sure, some district courts have taken Defendants' approach and dismissed DTSA claims for lack of subject-matter jurisdiction after finding the interstate-commerce element lacking. *See, e.g., Gov't Emps. Ins. Co. v. Nealey*, 262 F.Supp.3d 153, 172 (E.D. Pa. 2017) (collecting cases); *Islands Hospice, Inc. v. Duick*, No. 19-00202-JMS-WRP, 2019 WL 4620369, at *3 (D. Haw. Sep. 23, 2019). However, courts "sometimes mischaracterize[ ] ... elements of a cause of action as jurisdictional limitations." *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 161, 130 S.Ct. 1237, 176 L.Ed.2d 18 (2010). The Supreme Court has made clear that elements of a cause of action or other statutory limits on a plaintiff's right to recovery are not jurisdictional limitations unless the statute "clearly states" as much. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006). If the statute does not label an

5

> element as jurisdictional, then courts should not treat it as such. *Id.* at 516, 126 S.Ct. 1235. And while courts sometimes refer to a statute's requirement for a nexus to interstate commerce as "jurisdictional," this is merely a shorthand for indicating that a nexus to interstate commerce is required for the federal statute to govern—not an indication that courts lack adjudicatory authority over a case where the nexus is found lacking. *United States v. Vargas*, 673 F.App'x 393, 395 (5th Cir. 2016) (per curiam) (quoting *United States v. Moreland*, 665 F.3d 137, 144 n.3 (5th Cir. 2011) and *United States v. Sealed Appellant*, 526 F.3d 241, 243 (5th Cir. 2008)).
>
> Nothing in 18 U.S.C. § 1836 indicates that the interstate-commerce element of a DTSA claim is jurisdictional. The element appears in the same sentence that establishes all the elements of a DTSA claim. *See* 18 U.S.C. § 1836(b)(1). This sentence is not phrased in terms of when a federal court may exercise its adjudicatory authority, but rather in terms of when a plaintiff "may bring a civil action." *Id.* In other words, the DTSA's interstate-commerce requirement constrains a plaintiff's entitlement to relief under the statute—not the adjudicatory authority of federal courts. Accordingly, the Court will construe Defendants' dismissal motions as seeking dismissal of Providence's DTSA claims under Rule 12(b)(6) rather than Rule 12(b)(1). *See Henderson v. Saf-Tech, Inc.*, No. H-13-1766, 2013 WL 6858503, at *2 (S.D. Tex. Dec. 30, 2013) (construing a Rule 12(b)(1) motion as a Rule 12(b)(6) motion).
>
> . . . .
>
> Although the Court has jurisdiction over this case, the Court will consider Defendants' Rule 12(b)(6) objections to Providence's DTSA claim prior to addressing Providence's preliminary-injunction motion because, the DTSA claim being the only federal claim on which to base supplemental jurisdiction, dismissal of the DTSA claim could be dispositive of this entire action.

*Providence Title Co. v. Truly Title, Inc.*, 547 F. Supp. 3d 585, 594–96 (E.D. Tex. 2021), *reconsideration denied,* No. 4:21-CV-147-SDJ, 2021 WL 5003273 (E.D. Tex. Oct. 28, 2021), and *aff'd sub nom. Providence Title Co. v. Fleming*, No. 21-40578, 2023 WL 316138 (5th Cir. Jan. 19, 2023). The United States Court of appeals affirmed the *Providence* court's ruling. And its analysis is persuasive, and controlling here.

6

Therefore, to the extent that Defendants seek dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the motion should be denied.

### B. Rule 12(b)(6)

#### 1. APEL must raise a plausible right to relief.

Under Fed. R. Civ. P. 12(b)(6), a court may grant a motion to dismiss all or part of a complaint for "failure to state a claim upon which relief can be granted." Accordingly, "'[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Liggins v. Duncanville, Texas*, 52 F.4th 953, 954–55 (5th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

A claim is "facially plausible" when the facts alleged "allow a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020) (internal citation and quotation omitted). Factual allegations need not be detailed, but they must "raise a right to relief above the speculative level." *Serrano v. Customs & Border Patrol, U.S. Customs & Border Prot.*, 975 F.3d 488, 496 (5th Cir. 2020).[1] Allegations that are "merely consistent with" liability are insufficient. *See Ashcroft*, 556 U.S. at 678–79. In deciding a motion to dismiss, a court must "accept as true all well-pleaded facts and construe the complaint in the light most favorable to the plaintiff." *Norsworthy v. Houston Indep. Sch. Dist.*, 70 F.4th 332, 336 (5th Cir. 2023). But a court need not accept "conclusory allegations, unwarranted factual inferences, or legal conclusions."

---

[1] Under Federal Rule of Civil Procedure 8(a)(2), a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

*Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020) (internal citations and quotations omitted).

    2.    <u>APEL must satisfy three elements to state a viable DTSA claim.</u>

Under the DTSA, "[a]n owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). "To successfully bring a claim alleging a violation of the DTSA, a plaintiff must show, '(1) the existence of a trade secret; (2) misappropriation of the trade secret by another; and (3) the trade secret's relation to a good or service used or intended for use in interstate commerce.'" *Volt Power, LLC v. Deville*, No. 1:21-CV-00395, 2022 WL 70125, at *3 (W.D. La. Jan. 6, 2022) (quoting *Sapienza v. Trahan*, 2017 WL 6012658, at *6 (W.D.La. Oct. 23, 2017). "Moreover, 'existing state law on trade secrets informs the Court's application of the DTSA.'" *Complete Logistical Servs., LLC v. Rulh*, 350 F. Supp. 3d 512, 518 (E.D. La. 2018) (quoting *Source Prod. & Equip. Co. v. Schehr*, No. 16-17528, 2017 WL 3721543, at *2 (E.D. La. Aug. 29, 2017)).

    a.    <u>APEL has adequately identified trade secrets.</u>

Defendants argue, in summary, that APEL has failed to identify – or to adequately describe – the trade secrets at issue in this case. The DTSA defines the term "trade secrets" as follows:

> [T]he term "trade secret" means all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how

> stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—
>
> **(A)** the owner thereof has taken reasonable measures to keep such information secret; and
> **(B)** the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information; . . . .

18 U.S.C.A. § 1839(3).

The definition of a trade secret is intentionally broad, and includes "information that derives independent economic value from not being generally known to or ascertainable by other persons," and "that is the subject of reasonable efforts to maintain the information's secrecy." *Alfasigma USA, Inc. v. EBM Med., LLC*, No. CV 17-7753, 2018 WL 1604961, at *3 (E.D. La. Apr. 3, 2018) (citing La. Stat. Ann. § 51:1431; 18 U.S.C. § 1839 (2016)). "Notably, even if a compilation of information consists of 'readily available' information, 'it may be protected as a trade secret given the difficulty and expense of compiling the information.'" *Complete Logistical Servs., LLC*, 350 F. Supp. 3d at 518 (quoting *360 Mortg. Grp., LLC v. Homebridge Fin. Servs., Inc.*, No. 14-00847, 2016 WL 900577, at *4 (W.D. Tex. Mar. 2, 2016).

Still, descriptions of trade secrets that are merely categorical or conclusory are inadequate:

> "[T]o allege a trade secret, the plaintiff must 'describe the subject matter of the trade secret with sufficient particularity *to separate it from matters of general knowledge in the trade* or *of special persons who are skilled in the trade*, and to permit the defendant to ascertain at least the boundaries within which the secret lies.' " *Am. Biocarbon, LLC v. Keating*, No. 20-00259, 2020 WL 7264459, at *4 (M.D. La. Dec. 10, 2020)

9

>
> (emphasis added) (quoting *Navigation Holdings, LLC v. Molavi*, 445 F. Supp. 3d 69, 75 (N.D. Cal. 2020)). Courts generally find that pleadings are inadequate when the alleged trade secrets are identified only by category or broad conclusory statements. *See Intrepid Fin. Partners, LLC v. Fernandez*, No. 20-9779, 2020 WL 7774478, at *4 (S.D.N.Y. Dec. 30, 2020) ("Plaintiff merely references categories of information concerning its clients and ordinary business operations, and conclusorily alleges that such information is not readily available and affords [plaintiff] economic value such that it should be deemed a trade secret."). In other words, a plaintiff may not "set out its purported trade secrets in broad, categorical terms," in a way that is merely "descriptive of the types of information that generally may qualify as protectable trade secrets...." *Vendavo, Inc. v. Price f(x) AG*, No. 17-06930, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018). Instead, a plaintiff must identify the "particular trade secrets [that it] has a basis to believe actually were misappropriated...." *Id.*

*Bureau Veritas Commodities & Trade, Inc. v. Nanoo*, No. CV 20-3374, 2021 WL 2142466, at *3 (E.D. La. May 26, 2021).

In this case, APEL's allegations are adequate to survive the Rule 12(b)(6) analysis. APEL has identified four categories of trade secrets at issue. Defendants correctly argue that, at least in some instances, APEL does not describe its trade secrets with granular detail. But under the circumstances, it does not have to do so. What APEL must do, and has done, is describe its purported trade secrets with enough detail to distinguish them from generally-known information, and to identify at least the "boundaries" of the protected information.

Specifically, APEL identifies the following four "trade secrets" in its Amended Complaint:

1. the "Client List," which APEL alleges:

    a. APEL assembled over a period of years using its industry positioning and unique industry relationships;

    b.    is, at least in part, not generally known or readily ascertainable; and

    c.    gives APEL a competitive advantage in securing contracts given unique knowledge, such as specific contact persons and strategies for securing contacts and maintaining such relationships;

2.    the "LEAD West Course Materials," which APEL alleges:

    a.    contain "a curriculum outline, course of instruction, presentation materials, and PowerPoints for the LEAD West program for use in providing its professional training services to the customer";

    b.    APEL developed "primarily for . . . internal purposes and is not generally known to the public and is not readily ascertainable"; and

    c.    derived APEL specific economic value when APEL used the materials to provide the program to a particular school district;

3.    the "Member Database," which APEL alleges:

    a.    it developed over "many years" in cultivating relationships with its roughly 9,500 members, making it generally unknown and unavailable;

    b.    contains various forms of private, and often sensitive, information regarding its members; and

    c.    generates membership dues and a marketing base; and

    4.    the "Sponsorship/Vendor Invitation" from the Louisiana Association of Principals ("LAP"), which APEL alleges:

        a.    resulted from its "years of sponsorships and relationships as a vendor";

        b.    is not generally known or available; and

        c.    generates economic value for APEL by providing it the opportunity to "market and advertise its services directly to school administrators."

Again to Defendants' point, APEL frequently hedges its descriptions with generalities – "[a]mong other services," for instance. ECF No. 15 at 8. However, while "catchall phrases" do not suffice, "the Fifth Circuit has never required that trade secrets 'be pled with extreme specificity." *Brown & Root Indus. Servs., LLC v. Brown*, No. CV 21-291-JWD-SDJ, 2022 WL 4492087, at *5 (M.D. La. Sept. 9, 2022), *report and recommendation adopted,* No. CV 21-291-JWD-SDJ, 2022 WL 4490136 (M.D. La. Sept. 27, 2022) (internal citation and quotation omitted). And federal courts in Louisiana have held that various comparable types of information constitute trade secrets under the DTSA:

- confidential customer lists used to market products[2];
- "profit and loss statements, customer lists, and sales analyses[3];

---

[2] *Complete Logistical Servs., LLC*, 350 F. Supp. 3d at 518.

[3] *Id.*

12

- "client contact identities, crew rates, bid proposals, and sales strategies[4]

- a construction equipment dealer's list of its top 30 customers, a list of job prospects, and a series of computer screenshots reflecting "'reflecting client information, customer-specific billing rates, invoiced amounts, equipment rates, and market performance"[5];

- "the formulation of [medical food products], as well as customer lists and other information used to market" those products[6];

- "customer information," "financial and operational information," "employee's salaries, benefits, and agreements."[7]

APEL's purported trade secrets are comparable to these and others. APEL has taken reasonable measures to keep the information secret, including securing its digital storage of the information, securing its physical premises, limiting access to and dissemination of the information, and requiring private login and authentication credentials to access the information. *See, e.g.*, *Complete Logistical Servs., LLC,* 350 F. Supp. 3d at 519 (maintaining information on a "secure" computer system, and

---

[4] *Volt Power, LLC v. Deville*, No. 1:21-CV-00395, 2022 WL 70125, at *3 (W.D. La. Jan. 6, 2022).

[5] *H&E Equip. Servs., Inc. v. Harley*, No. CV 22-103-SDD-RLB, 2022 WL 541774, at *2 (M.D. La. Feb. 23, 2022).

[6] *Alfasigma USA, Inc.*, 2018 WL 1604961 at *3.

[7] *Bureau Veritas Commodities & Trade, Inc. v. Nanoo*, No. CV 20-3374, 2021 WL 2142466, at *6 (E.D. La. May 26, 2021) (rejecting plaintiff's claims that broad categories of information inseparable from information that is generally available -- such as "organizational structure" and "laboratory technology" – were trade secrets).

declining to share that information outside the company, may constitute adequate measures to protect trade secret; *Source Prod. & Equip. Co. v. Schehr*, No. CV 16-17528, 2017 WL 3721543, at *3 (E.D. La. Aug. 29, 2017) ("Plaintiffs further assert that they keep these technologies secret by securing their physical facilities and limiting access to their electronic data.[26] These policies are reasonable measures to maintain secrecy."). And APEL has alleged that any compilation of readily available information was accomplished only with its considerable effort and investment. *See, e.g., id.* at 518.

Therefore, as to each of the four categories of information above, APEL has adequately alleged the existence of "trade secrets."

    b.    <u>APEL has adequately alleged misappropriation.</u>

The DTSA defines "misappropriation" as follows:

(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(B) disclosure or use of a trade secret of another without express or implied consent by a person who—

    (i) used improper means to acquire knowledge of the trade secret;
    (ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was--
        (I) derived from or through a person who had used improper means to acquire the trade secret;
        (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or
        (III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret; or
    (iii) before a material change of the position of the person, knew or had reason to know that--

> (I) the trade secret was a trade secret; and
> (II) knowledge of the trade secret had been acquired by accident or mistake;

18 U.S.C. § 1839(5). The term "improper means": (A) includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means; and (B) does not include reverse engineering, independent derivation, or any other lawful means of acquisition." *Id.* § 1839(6); *see also Accresa Health LLC v. Hint Health Inc.*, No. 4:18-CV-00536, 2020 WL 3637801, at *5 (E.D. Tex. July 6, 2020) ("[T]he DTSA's definition of "misappropriation" includes acquisition or use of trade secrets with the knowledge that they were acquired by improper means."); *Sapienza v. Trahan*, No. 16-CV-01701, 2017 WL 6012658, at *6 (W.D. La. Oct. 23, 2017), *report and recommendation adopted,* No. CV 16-1701, 2017 WL 6008076 (W.D. La. Dec. 4, 2017) ("The DTSA also provides injunctive relief to prevent actual or threatened misappropriation.") (citing 18 U.S.C. § 1836(3)(A)).

APEL alleges that Britt:

- copied the LEAD West Course Materials without APEL's knowledge or consent, and provided them to Dumas and EDU, who subsequently used the materials as the basis for at least one professional event;

- using her work email, forwarded the Sponsorship/Vendor Invitation to Dumas (and another EDU member/manager);

- copied some or all of the Client List, and used it to solicit clients from at least one – and perhaps other – APEL client school districts; and

- accessed the Member Database shortly before her resignation from APEL. This alone, of course, may be insufficient. But APEL further explains that Britt had neither reason nor authorization to access the Member Database. And subsequently, according to APEL, there was "significant overlap" between APEL members and attendees at EDU events.

Courts have routinely found similar allegations sufficient. Some courts have held that misappropriation may occur, for instance, when a former employee surreptitiously downloads confidential and proprietary information to an electronic storage device, provides it to a competitor, who then uses the information with knowledge of how it was acquired. *See generally Volt Power, LLC*, 2022 WL 70125 at *4. Likewise, forwarding confidential information to competitors can constitute misappropriation. *See, e.g. H&E Equip. Servs., Inc. v. Harley*, No. CV 22-103-SDD-RLB, 2022 WL 541774, at *6 (M.D. La. Feb. 23, 2022); *Schehr*, 2017 WL 3721543 at *4 ("The essence of plaintiffs' wrongful acquisition allegation is that Schehr improperly conveyed trade secrets to SPEC's competitors, which accepted these secrets knowing that Schehr is a former employee of SPEC. Courts have found that competitors' acquisition of trade secrets in similar factual scenarios constitutes misappropriation.") (collecting similar cases). Thus, APEL's allegations as to the misappropriation element are adequate under Fed. R. Civ. P. 12(b)(6).

16

c.  **APEL's allegations satisfy the interstate commerce requirement.**

Finally, EPLA must adequately allege that its purported trade secrets are used or intended for use in interstate or foreign commerce. *See* 18 U.S.C. § 1836(b)(1) (requiring that "the trade secret [be] related to a product or service used in, or intended for use in, interstate or foreign commerce"); *see also Pyramid Instrumentation & Elec. Corp. v. Hebert*, No. 17-CV-1358, 2018 WL 1789325, at *3 (W.D. La. Mar. 14, 2018), report and recommendation adopted, No. 2:17-CV-1358, 2018 WL 1788621 (W.D. La. Apr. 13, 2018) ("To state a claim under the DTSA, a plaintiff must also allege the trade secret's relation to a good or service used or intended for use in interstate or foreign commerce."). In considering this element of a DTSA claim, two initial points bear emphasis.

First, the disputed trade secret must relate to a product or service *used or intended to be used* in interstate commerce. Merely *affecting* interstate commerce, would not suffice:

> While Congress's constitutional authority to regulate interstate commerce is not strictly limited to activity "in" interstate commerce, Congress can so limit the reach of particular statutes if it chooses. *See McLain v. Real Estate Bd. of New Orleans, Inc.*, 444 U.S. 232, 241–42, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980) (explaining **\*597** that, though not constitutionally required, Congress sometimes limits the applicability of a statute to "activities demonstrably in commerce" (quotation omitted)). The extent of the activity regulated depends on the statute's language. When a statute specifies that it applies to activity "in commerce," the statute applies only to activity actually within the flow of interstate commerce as opposed to activity that merely affects interstate commerce. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) (quoting *United States v. Am. Bldg. Maint. Indus.*, 422 U.S. 271, 276, 95 S.Ct. 2150, 45 L.Ed.2d 177 (1975)). The flow of interstate commerce is defined as "the generation of goods and services for interstate markets and their transport and

17

> distribution to the consumer." *Am. Bldg. Maint. Indus.*, 422 U.S. at 276, 95 S.Ct. 2150.
>
> 12The text of the DTSA indicates that its applicability is limited to activity that is actually in, as opposed to activity that merely affects, interstate commerce. The DTSA provides that it applies to trade secrets that are "related to a product or service *used in*, or intended for *use in*, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1) (emphasis added). Accordingly, to state a claim under the DTSA, a plaintiff must allege that its purported trade secrets relate to a product or service within the flow of interstate commerce.

*Providence Title Co.*, 547 F. Supp. 3d at 596–97.

Second, the *product or service* must be used in interstate commerce – not the *trade secret* itself:

> Although the DTSA's interstate-commerce element is not as broad as it constitutionally could have been, it is also not as narrow as Defendants contend. Contrary to Defendants assertions, the DTSA does not require that the alleged trade secrets themselves be used in interstate commerce. Rather, the DTSA requires that the trade secrets *relate to a product or service* that is used in interstate commerce. 18 U.S.C. § 1836(b)(1). It is the underlying product or service—not the trade secret—that must be used in or intended for use in interstate commerce in order to assert a claim under the DTSA. *See, e.g., United States v. Agrawal*, 726 F.3d 235, 245–46 (2d Cir. 2013) (holding that where a theft-of-trade-secrets statute required that the trade secret relate to a product in interstate commerce, the trade secret need not itself have been placed in interstate commerce); *Islands Hospice*, 2019 WL 4620369, at *4 (rejecting the argument that the DTSA requires that the trade secret itself be used in interstate commerce).

*See id.* at 597.

While some of EPLA's allegations are more plainly tethered to interstate commerce than others, they make clear that EPLA uses its trade secrets to provide products and services that are used, or intended to be used, in interstate commerce. More specifically, EPLA alleges that it: has sold at least some products and services

18

in other states; has provided consulting services to the Association of American Educators, a national organization; has hundreds of members that reside or have resided in other states; assists members in transferring licenses between states, and; provides scholarships and training to educators applicable to their professional skills and certifications in other states or nationally.

These allegations comport with others courts have found to satisfy the interstate commerce requirement. *See, e.g.*, *Providence Title Co.*, 547 F. Supp. 3d at 598 (real estate title services to interstate clients); *Rulh*, 350 F. Supp. 3d at 520 (interstate clients). Thus, EPLA's allegations regarding the interstate commerce requirement are adequate as well.

### III. Conclusion

For the foregoing reasons,

IT IS RECOMMENDED that Defendants' Motion to Dismiss (ECF No. 8) be DENIED.

Under 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), a party may file written objections to this Report and Recommendation within 14 days of service, unless the Court grants an extension of time to file objections under Fed. R. Civ. P. 6(b). A party may also respond to another party's objections to this Report and Recommendation within 14 days of service of those objections, again unless the Court grants an extension of time to file a response to objections.

No other briefs may be filed without leave of court, which will only be granted for good cause. A party's failure to timely file written objections to this Report and

Recommendation will bar a party from later challenging factual or legal conclusions adopted by the District Judge, except if the challenge asserts "plain error."

SIGNED on Monday, September 11, 2023.

_____
JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE