UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| **ASSOCIATED PROFESSIONAL EDUCATORS OF LOUISIANA** | **CASE NO.  1:22-CV-05720** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **EDU20/20 LLC ET AL** | **MAGISTRATE JUDGE PEREZ-MONTES** |

**MEMORANDUM RULING**

Before the Court are *five* motions for partial summary judgment.  The plaintiff, Associated Professional Educators of Louisiana ("A+PEL") filed the first (R. Doc. 79), second (R. Doc. 82), and third (R. Doc. 84).  The defendants, EDU20/20, Courtney Dumas ("Dumas"), and Miranda Britt ("Britt") (collectively, "Defendants") filed the fourth (R. Doc. 85) and fifth (R. Doc. 86).  Each motion is opposed.

After careful consideration of the parties' memoranda and the applicable law, the first, second, and third Motions, all filed by A+PEL, are **DENIED,** and the fourth and fifth Motions, both filed by Defendants, are **GRANTED.**

## I.    BACKGROUND

This case stems from a dispute wherein Defendants allegedly misappropriated the property—intellectual or otherwise—of A+PEL, for EDU20/20's benefit.[1]  Both A+PEL and EDU20/20 provide training and programming to teachers in Louisiana.[2]  Britt is a part-owner of EDU20/20, and an ex-employee of A+PEL.[3]  The alleged acts of Britt—while still employed by A+PEL—give rise to the lion's share of the claims currently before the Court.[4]  As it stands today,

---

[1] R. Doc. 41 at 12–28.
[2] *Id*. at 5–6, 14.
[3] *Id*. at 12–15.
[4] *Id*. at 12–28.

A+PEL accuses Defendants of misappropriating its trade secrets in violation of the Defend Trade Secrets Act ("DTSA")[5] and the Louisiana Uniform Trade Secrets Act ("LUTSA")[6]; impermissibly soliciting A+PEL's customers in violation of the Louisiana Unfair Trade Practices Act ("LUTPA")[7]; "unfair competition" and trademark infringement under the Lanham Act[8]; and civil conspiracy.[9]  Further, A+PEL asserts a claim for breach of fiduciary duty against Britt alone.[10]

### A. The First Motion

The first motion for partial summary judgment is on "liability only" and seeks our adjudgment that (1) Britt breached her fiduciary duty to A+PEL and (2) that she violated LUTPA.[11] Mainly, A+PEL contends that Britt diverted business opportunities to EDU20/20 while still employed by A+PEL.[12]  Further, A+PEL points to Britt's alleged use of paid time off ("PTO") from A+PEL to instead promote EDU20/20, "lying to [the Executive Director of A+PEL]," and numerous other episodes of alleged unfaithfulness by Britt.[13]  By A+PEL's estimation, Britt's acts were *per se* violative of a "bright-line rule" that "[a]n employee cannot compete with her employer while she is still employed."[14]  Accordingly, A+PEL contends that no genuine issues of material fact exist as to Britt's liability as an alleged fiduciary, and Defendants' liability under LUTPA.[15]

Defendants filed an Opposition, challenging A+PEL's motion for a flurry of reasons.[16] First, Defendants aver that Britt, as a mere employee, owed no fiduciary duty to A+PEL, and thus

---

[5] *Id.* at 28–31 (citing 18 U.S.C. § 1836).
[6] *Id.* at 31–33 (citing La. R.S. 51:1431, *et seq.*).
[7] *Id.* at 34–35 (citing La. R.S. 51:1401, *et seq.*).
[8] *Id.* at 37 (citing 15 U.S.C. § 1125(a)).
[9] *Id.* at 35–36 (citing La. Civ. Code art. 2324(A)).
[10] *Id.* at 33–34.
[11] R. Doc. 79 at 1.
[12] R. Doc. 79-1 at 12-24.
[13] *Id.*
[14] *Id.* at 19.
[15] *Id.* at 30.
[16] R. Doc. 97.

was incapable of such a breach.[17]  Second, Defendants point out that a finding of intent (requisite for breach of fiduciary duty claims) is broadly inappropriate at the summary judgment stage.[18] Third, Defendants contend that the corporate opportunities that Britt allegedly usurped for EDU20/20 either were not usurped at all or were not A+PEL's in the first place.[19]  Fourth, Defendants aver that A+PEL consented to Britt's simultaneous employment with EDU20/20.[20] Fifth, Defendants assert that A+PEL has failed to show actual damages as required under LUTPA.[21]  And finally, Defendants allege that "[t]he [b]ulk" of A+PEL's LUTPA claims are perempted.[22]  Accordingly, Defendants request that the motion be denied.[23]

A+PEL filed a Reply.[24]  A+PEL argues that it need not show actual damages if it is only seeking summary judgment on liability.[25]   A+PEL additionally challenges Defendants' characterization of the duties owed to an employer, and asserts that no dispute exists as to whether Britt breached these duties.[26]  A+PEL closes by denying any dispute with regard to Britt's alleged intent; denying A+PEL's knowledge of Britt's concurrent employment with EDU20/20; and invoking *contra non valentum* with regard to the timeliness of its LUTPA claims.[27]

### B.  The Second Motion

The second motion for partial summary judgment seeks our adjudgment that Defendants violated the Lanham Act, both by unfairly competing with A+PEL, and by using A+PEL's logo.[28]

---

[17] *Id.* at 9-11.
[18] *Id.* at 11-12.
[19] *Id.* at 12-20
[20] *Id.* at 21-24.
[21] *Id.* at 24-25.
[22] *Id.* at 25.
[23] *Id.* at 30.
[24] R. Doc. 105.
[25] *Id.* at 1–3.
[26] *Id.* at 3–6.
[27] *Id.* at 6–10.
[28] R. Doc. 82-1 at 11–28.

A+PEL contends that Britt's unauthorized use of A+PEL's logo during a presentation (for EDU20/20) constituted trademark infringement by creating a likelihood of confusion, and causing actual confusion.[29]  In support of this claim, A+PEL namely relies on the declaration of its intended expert—Tobias Wilhelm.[30]  Furthermore, and specifically in support of its derivative contention that people "actual[ly] confus[ed]" the marks of A+PEL and EDU20/20, A+PEL offers the declarations of Torrence Williams and Dr. Tia Neal.[31]  A+PEL concludes its motion by denying that Britt's use of the A+PEL logo constituted fair use.[32]

Defendants filed an Opposition.[33]  Defendants contend that A+PEL hasn't a trademark in the first place; that even if A+PEL did have an otherwise-protectable trademark, it is fatally absent from interstate commerce; and that even if A+PEL had a protectable mark used in interstate commerce, no requisite likelihood of confusion exists.[34]  Additionally, Defendants poke holes in both the expertise and analysis of A+PEL's intended expert, Tobias Wilhelm, and contend that the two other declarants, Torrence Williams and Dr. Tia Neal, are both employed by A+PEL currently and thus incredible.[35]  Finally, Defendants reassert their "fair use" defense, while pointing out that A+PEL did not address their other affirmative defenses in its Motion.[36]

A+PEL filed a Reply, challenging Defendants' conclusions regarding the A+PEL mark and its use in commerce.[37]  Thereafter, A+PEL runs through the likelihood of confusion once more, makes a pitstop at fair use, and ends with a graze on Defendants' other affirmative defenses.[38]

---

[29] *Id.* at 22.
[30] *See* R. Doc. 82-3.
[31] R. Doc. 82-1 at 24–25.
[32] *Id.* at 19–22.
[33] R. Doc. 99.
[34] *Id.* at 10–18.
[35] *Id.* at 17–23.
[36] *Id.* at 24–29.
[37] *Id.* at 1–3.
[38] *Id.* at 3–10.

## C. The Third Motion

A+PEL's third and final[39] motion for partial summary judgment seeks our adjudgment that Defendants violated DTSA and LUTSA.[40]  As the basis of its trade secrets claims, A+PEL asserts that Defendants—namely Britt—stole its "Mentor Teacher" programming material to create their very own "Mentor Teacher" program at EDU20/20.[41]  Allegedly, Britt accomplished this heist by surreptitiously acquiring a Google account from West Baton Rouge Schools, and using said account to acquire A+PEL's files.[42]  Accordingly, A+PEL avers that no genuine dispute exists as to whether Defendants violated DTSA and LUTSA.[43]  And if that does not work, A+PEL asks us to—at the very least—dismiss Defendants' request for attorney's fees under DTSA and LUTSA.[44]

Defendants oppose.[45]  Defendants contend first that any claim for trade secret misappropriation arising from the "Mentor Teacher" program does not exist in the operative Complaint, and that such a novel claim cannot be raised in this Motion.[46]  But even if the claim were properly before the Court, Defendants contend that A+PEL has no evidence to support it.[47]  According to Defendants, the "Mentor Teacher" materials are basically a repackaging of open-source content distributed by the Louisiana Department of Education, rendering them not a secret.[48]  Furthermore, Defendants point out that the "Mentor Teacher" programming is shared and shown to participants, who are not required to sign non-disclosure agreements or otherwise bound to keep the materials secret.[49]  Finally, Defendants challenge the commercial value that Britt or

---

[39] Thank goodness.
[40] R. Doc. 84 at 1.
[41] R. Doc. 84-1 at 18–24.
[42] *Id.* at 13–16.
[43] *Id.* at 24.
[44] *Ibid.*
[45] R. Doc. 103.
[46] *Id.* at 15–17.
[47] *Id.* at 17–19.
[48] *Id.* at 20–23.
[49] *Id.* at 23–25.

EDU20/20 could have derived from the "Mentor Teacher" materials, arguing that the content is "outdated" and that EDU20/20 has never had a "Mentor Teacher" program or derived any income from its use of such materials.[50] Accordingly, Defendants aver that A+PEL is unable to support its claims for trade secret misappropriation.[51]

A+PEL filed a Reply.[52] Within, A+PEL promises that the "Mentor Teacher" program is actually a trade secret; and, furthermore, that the only reason why EDU20/20 does not have its very own "Mentor Teacher" program is because A+PEL sued.[53]

### D. The Fourth Motion

Now to Defendants' motions. The fourth motion for partial summary judgment seeks our dismissal of A+PEL's Lanham Act claims, or any claim brought under LUTPA arising from Defendants' use of the A+PEL logo.[54] Defendants contend that A+PEL's evidence, namely the declaration of Tobias Wilhelm, is insufficient to support a Lanham Act claim.[55] Furthermore, Defendants aver that A+PEL is unable to show actual damages, a supposed predicate for both Lanham Act and LUTPA claims.[56] Accordingly, Defendants seek dismissal of these claims.[57]

A+PEL opposes, basically reiterating its Motion on this subject (R. Doc. 82) and reassuring the Court that Tobias Wilhelm's declaration is credible.[58]

Defendants filed a Reply, serving mainly to buttress their evidentiary quibbles and point out that A+PEL's Opposition is insufficient to create a genuine issue of material fact.[59]

---

[50] *Id.* at 25–29.
[51] *Id.* at 29.
[52] R. Doc. 108.
[53] *Id.* at 5–8.
[54] R. Doc. 85 at 1.
[55] R. Doc. 85-1 at 8–13.
[56] *Id.* at 13–15.
[57] *Id.* at 16.
[58] R. Doc. 93 at 1–33.
[59] R. Doc. 98.

### E. The Fifth Motion

The fifth motion for partial summary judgment seeks our dismissal of A+PEL's trade secrets claims, and any other claims premised on Defendants' use of A+PEL's allegedly confidential information.[60]  Defendants' Motion predictably mirrors their Opposition to A+PEL's Motion on this subject.[61]  Again, Defendants contend that A+PEL's information is neither valuable, nor concealed, and thus cannot give rise to a trade secret claim.[62]  Furthermore, Defendants note that A+PEL's customers are the school districts of Louisiana, meaning the A+PEL customer list is reproducible with common sense.[63]  Last, Defendants assert that A+PEL's materials were never used for the benefit of EDU20/20.[64]  Accordingly, Defendants seek dismissal of these claims.

A+PEL opposes the Motion for the same reasons that it seeks summary judgment in its favor, except to additionally address the customer list, and that such a list is proprietary.[65]

Defendants filed a Reply to reassert its original evisceration of A+PEL's claims, and to reiterate the bombshell that Dumas (the proprietor of EDU20/20 who was never personally affiliated with A+PEL) created some of the slides that A+PEL now contends were stolen from it.[66]  Crazier still, these slides were allegedly used for A+PEL's benefit before Britt's departure.[67]

## II.    LEGAL STANDARD

Summary judgment is appropriate when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Only disputes over facts that might affect the outcome of the suit under the

---

[60] R. Doc. 86 at 1.
[61] *See* R. Doc. 103.
[62] R. Doc. 86 at 9–18.
[63] *Id.* at 18–22.
[64] *Id.* at 23–29.
[65] *Id.* at 20–21.
[66] R. Doc. 107.
[67] *Id.* at 3–5.

governing law will properly preclude the entry of summary judgment." *Hyatt v. Thomas,* 843 F.3d 172, 177 (5th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute is genuine if the summary judgment evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Id.* (internal quotations omitted). In evaluating a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E&P USA Inc. v. Kerr-McGee Oil & Gas Corp.,* 719 F.3d 424, 434 (5th Cir. 2013) (internal citations omitted).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson,* 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.,* 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.*

## III.    ANALYSIS

### A.  Trademark Claims

We begin with A+PEL's claims under the Lanham Act. 15 U.S.C. § 1125. "Because [A+PEL's] claims of unfair competition and trademark infringement […] under Section 43(a) of the Lanham Act are one [and] the same, they need not be addressed as separate causes of action." *Tactica Int'l, Inc. v. Atl. Horizon Int'l, Inc.*, 154 F.Supp.2d 586, 597 n. 14 (S.D.N.Y. 2001). To

prevail on a trademark infringement claim, a plaintiff "must show (1) it possesses a legally protectable trademark and (2) Defendants use of this trademark creates a likelihood of confusion as to source, affiliation, or sponsorship." *Rex Real Est. I, L.P. v. Rex Real Est. Exch., Inc.*, 80 F.4th 607, 616 (5th Cir. 2023) (cleaned up). We don't explore here whether A+PEL's mark is legally protectable, as A+PEL's claim plainly fails on the "likelihood of confusion" requirement. "Likelihood of confusion is synonymous with a probability of confusion, which is more than a mere possibility of confusion." *Bd. of Supervisors for Louisiana State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008) (citation omitted). When assessing the likelihood of confusion, a court considers the following factors: "(1) the type of mark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, and (7) any evidence of actual confusion." *Id*. "Courts also consider (8) the degree of care exercised by potential purchasers." *Id*. "No single factor is dispositive, and a finding of a likelihood of confusion need not be supported by a majority of the factors." *Id*.

The alleged infringement that A+PEL protests stems from its logo's presence on this slide (and similar others) given at a presentation by Britt to educators:



R. Doc 85-6 at 2; *see also* R. Doc. 85-4 at 3; R. Doc. 85-9 at 4.  This slide represents Britt's biographical information, including the logos of her former and current personal and professional affiliations.  It is similar in form to the biographical slides of her two co-presenters.  *See id*. at 3, 4.  Armed with this damning visual, we decline to reach new frontiers of absurdity and declare Britt's resumé violative of the Lanham Act.

A+PEL's Lanham Act claim namely relies on the declaration of its intended expert—Tobias Wilhelm.  R. Doc. 82–3.  Aside from being an overt puff piece, Wilhelm's declaration fails to create a genuine issue of material fact regarding the likelihood of confusion.[68]  *See id*.  For his determination on the "actual confusion" factor specifically, he declares that "Witnesses have reported confusion…" and not much else.  *Id*. at 6.  Worse still, the declarations of Torrence Williams and Dr. Tia Neal—no matter their current employer—do not support a finding of likelihood of confusion either.  *See, e.g., Vais Arms, Inc. v. Vais,* 383 F.3d 287, 293–94 (5th Cir. 2004) (holding that a nonmovant's "conclus[ory]," "vague, self-serving statements" were insufficient to preclude summary judgment); *BMG Music v. Martinez,* 74 F.3d 87, 91 (5th Cir. 1996) (holding that a nonmovant's "conclusory, self-serving statement" was insufficient to preclude summary judgment); *Clark v. Am.'s Favorite Chicken Co.,* 110 F.3d 295, 297 (5th Cir. 1997) ("Unsupported allegations or affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment."); *see also Kariuki,* 709 F.3d at 505 (" '[S]elf-serving allegations are not the type of significant probative evidence required to defeat summary judgment.' ... [W]ithout more, a vague or conclusory affidavit is insufficient to create [a fact issue]." (first alteration in original) (quoting

---

[68] The declarant's ease with making legal conclusions gives the Court pause, as it is the Court's province to conclude whether the elements of trademark infringement have been met, not A+PEL's expert.  *See Tesoros Trading Co. v. Tesoros Misticos, Inc*., 10 F. Supp. 3d 701, 714 n.4 (N.D. Tex. 2014).

*United States v. Lawrence,* 276 F.3d 193, 197 (5th Cir. 2001))); *DIRECTV, Inc. v. Budden,* 420 F.3d 521, 531 (5th Cir. 2005) ("[Attempting] to create a fact issue ... by relying on a conclusory and self-serving affidavit is on unsteady ground."). While it may have been "confusing" to two industry players (Williams and Dr. Neal) whether Britt was presenting on A+PEL's behalf or EDU20/20's behalf, the mystery apparently did not stem from her use of A+PEL's mark on one biographical slide, but rather that the "actual[ly] confus[ed]" declarants' knew Britt was employed with A+PEL at that time. *See* R. Doc. 79-22 at 1–2. This plainly does not give rise to a claim under the Lanham Act, especially considering that because "these persons are buying for professional and institutional purposes at a cost in the thousands of dollars, they are virtually certain to be informed, deliberative buyers." *Oreck Corp. v. U.S. Floor Sys., Inc.*, 803 F.2d 166, 173 (5th Cir. 1986). With these "consumer" declarations insufficient, and lacking a consumer survey, A+PEL has failed to create a dispute as to actual confusion. *Scott Fetzer Co. v. House of Vacuums Inc.,* 381 F.3d 477, 486–87 (5th Cir. 2004). We end with the reality that "[p]rominent and pervasive use of a mark will suggest affiliation, but mere reference to a marked product will not"; accordingly, the evidence in the record makes clear that the trademark claims against Defendants must be dismissed. *Id*. at 485.

**B. Trade Secret Claims**

A+PEL also makes claims under the Defend Trade Secrets Act ("DTSA") and Louisiana Uniform Trade Secrets Act, ("LUTSA"). 8 U.S.C. § 1836(b)(1); LA. REV. STAT. § 51:1431, *et seq.* Both statutes require "the existence of a trade secret" and the "misappropriation of the trade secret by another." *See RealPage, Inc. v. Enter. Risk Control, LLC*, No. 16-737, 2017 WL 3313729, at *9 (E.D. Tex. Aug. 3, 2017) (elements of a DTSA claim); *Reingold v. Swiftships, Inc.*,

126 F.3d 645, 648 (5th Cir. 1997) (elements of a LUTSA claim). Because the information contested here is neither secret, nor misappropriated, A+PEL's claims under both statutes fail.

There are two main categories of trade secrets disputed here—instructional materials and client lists. *See* R. Doc. 86-1 at 18–23. We address the instructional materials first. It is undisputed that A+PEL did not demand confidentiality from participants in its training sessions where the instructional materials were used. *See* R. Doc. 86-5. It is further undisputed that these participants were not, and never were, bound by a non-disclosure agreement to keep these materials confidential. *See id.* It is well-settled that "[i]f an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984). A+PEL's claim fails on that issue alone. With confidentiality now debunked, these materials aren't apt for a (more obvious) copyright claim either, given that they are—in large part—the original works of the Louisiana Department of Education, and that any damages flowing from their use appear fatally dubious. *See Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 357 (1991) ("[A] compilation, like any other work, is copyrightable only if it satisfies the originality requirement ('an original work of authorship')"); R. Doc. 95 at 14–15. Accordingly, Defendants cannot be broadly answerable for their use—not ever. Now for the customer list.

"To qualify as a trade secret, the information cannot be generally known by others in the same business nor readily ascertainable by an independent investigation. Thus, a customer list of readily ascertainable names and addresses will not be protected as a trade secret." *Zoecon Indus., a Div. of Zoecon Corp. v. Am. Stockman Tag Co.,* 713 F.2d 1174 (5th Cir. 1983) (internal citations omitted). A+PEL's customers are the school districts of Louisiana—not an especially

unascertainable crowd.  *See* R. Doc. 82-1 at 8.  And their contracts are matters of public record.[69]

Despite A+PEL's contentions, it appears that any possible advantage Britt had in soliciting A+PEL's clients flowed from her knowledge and relationships commensurate with being "second-in-command" at A+PEL, and not some list.  *See* R. Doc. 82-1 at 10 (explaining that Britt "develop[ed] relationships and contacts with"—and had "extraordinary access to"—A+PEL's clients, so much so that she was, at times, the "face of A+PEL.").  This does not give rise to a trade secrets claim.  *See Pure Air Daigle, LLC v. Stagg*, No. CV 6:16-1322, 2017 WL 11534244 (W.D. La. Jan. 11, 2017) ("[A] former employee is allowed to rely on his memory or general knowledge and skill gained in his former employment to compete with his former employer.").  Accordingly, the record shows that no dispute of fact exists as to A+PEL's DTSA or LUTSA claims lacking the "secret" predicate.

A+PEL's LUTSA claim specifically is further apt for dismissal, as recovery under LUTSA requires a plaintiff to show "the extent of the damages as a matter of just and reasonable inference…" *Brand Servs., L.L.C. v. Irex Corp.*, 909 F.3d 151, 157 (5th Cir. 2018) (cleaned up).  Even under the lax standard for trade secret damages, the Court finds that A+PEL's evidence does not muster a "reasonable inference."  *Id.*  Accordingly, summary judgment is doubly appropriate as to A+PEL's LUTSA claims.

---

[69] Pursuant to LSA–R.S. 44:1(A)(2)(a), "public records" encompass, "except as otherwise provided in [the Public Records Law] or the Constitution of Louisiana," the following: All books, records, writings, accounts, letters and letter books, maps, drawings, photographs, cards, tapes, recordings, memoranda, and papers, and all copies, duplicates, photographs, including microfilm, or other reproductions thereof, or any other documentary materials, regardless of physical form or characteristics, including information contained in electronic data processing equipment, having been used, being in use, or prepared, possessed, or retained for use in the conduct, transaction, or performance of any business, transaction, work, duty, or function which was conducted, transacted, or performed by or under the authority of the constitution or laws of this state, or by or under the authority of any ordinance, regulation, mandate, or order of any public body or concerning the receipt or payment of any money received or paid by or under the authority of the constitution or the laws of this state....

### C. Remaining State Law Claims

A federal court that has original jurisdiction may exercise "supplemental jurisdiction over all other claims that are so related to claims in the action" that "they form part of the same case or controversy." 28 U.S.C. § 1367(a). However, "[d]istrict courts enjoy wide discretion in determining whether to retain supplemental jurisdiction over a state claim once all federal claims are dismissed," and generally, "a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial." *Heggemeier v. Caldwell Cty., Tex.*, 826 F.3d 861, 872 (5th Cir. 2016) (cleaned up). Here, with the federal claims and LUTSA claim dispensed of, we decline to exercise our supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if. . .(3) the district court has dismissed all claims over which it has original jurisdiction"). Specifically, it appears that Defendants never adequately moved for summary judgment on A+PEL's LUTPA and breach of fiduciary duty claims arising out of Britt's alleged diversion of customers while still in the employ of A+PEL. Accordingly, we decline supplemental jurisdiction over those claims and dismiss them without prejudice, for A+PEL to re-urge in state court if it so chooses. We do, however, grant the remainder of Defendants' respective motions and dismiss with prejudice any of A+PEL's state law claims stemming from Defendants' use of either the A+PEL logo, or A+PEL's confidential information. R. Doc. 85-1 at 15; R. Doc. 86-1 at 29. A+PEL has failed to show any evidence to support a finding of damages with regard to the logo usage or the materials usage, which is fatal to both a LUTPA or breach of fiduciary duty claim. *See Camowraps, LLC v. Quantum Digital Ventures LLC,* 74 F. Supp. 3d 730, 742 (E.D. La. 2015) (cleaned up) ("The [] absence of any

evidence of quantified actual losses is fatal to any recovery of actual damages under LUTPA.");

*see also, F.D.I.C. v. Barton,* 233 F.3d 859, 864 (5th Cir. 2000) (same for breach of fiduciary duty).

## IV.   CONCLUSION

For the reasons set forth above,

**IT IS ORDERED** that A+PEL's first Motion for partial summary judgment (R. Doc. 79) is **DENIED.**

**IT IS FURTHER ORDERED** that A+PEL's second Motion for partial summary judgment (R. Doc. 82) is **DENIED**.

**IT IS FURTHER ORDERED** that A+PEL's third Motion for partial summary judgment (R. Doc. 84) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants' first Motion for partial summary judgment (R. Doc. 85) is **GRANTED.** Accordingly, A+PEL's Lanham Act, LUTPA,[70] and breach of fiduciary duty[71] claims are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Defendants' second Motion for partial summary judgment (R. Doc. 86) is **GRANTED.** Accordingly, A+PEL's DTSA, LUTSA, LUTPA,[72] and breach of fiduciary duty[73] claims are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Defendants' remaining LUTPA,[74] breach of fiduciary duty,[75] and conspiracy[76] claims are **DISMISSED without prejudice** as we decline jurisdiction.

---

[70] This claim is limited to any LUTPA claim arising from Defendants' use of A+PEL's logo.

[71] This claim is limited to any breach of fiduciary duty claim arising from Britt's use of A+PEL's logo.

[72] This claim is limited to any LUTPA claim arising from Defendants' use of A+PEL's "confidential" information.

[73] This claim is limited to any breach of fiduciary duty claim arising from Britt's use of A+PEL's "confidential" information.

[74] This claim is limited to any LUTPA claim arising from Britt's alleged diversion of customers from A+PEL.

[75] This claim is limited to any breach of fiduciary duty claim arising from Britt's alleged diversion of customers from A+PEL.

[76] This claim is limited to conspiracy to unlawfully divert customers from A+PEL.

**MONROE, LOUISIANA**, this 1st day of October, 2024.

Terry A. Doughty
United States District Judge